

Deborah Crabbe
Foster Pepper PLLC
1111 Third Ave
Suite 3400
Seattle, WA 98101
Phone: (206) 447-4400
Fax: (206) 447-9700
Email: crabd@foster.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| JELD-WEN, inc. <br><br> Plaintiff, <br><br> v. <br><br> AGC America, Inc., AGC Flat Glass North America, Inc., Guardian Industries Corporation, Pilkington North America, Inc., Pilkington Holdings Inc., and PPG Industries, Inc., <br><br> Defendants. | 3:11-cv-385-BR <br><br> COMPLAINT |

Plaintiff, by its undersigned attorneys, allege upon information and belief as follows:

### NATURE OF THE CASE

1. This lawsuit is brought by JELD-WEN, inc., ("JELD-WEN"), which purchased flat glass, as defined herein, in the United States directly from defendants or their controlled subsidiaries from January 1, 2002 through at least December 31, 2006 (the "Claim Period"). Defendants are manufacturers and sellers of flat glass who contracted, conspired or combined to fix, raise, maintain or stabilize prices of, and allocate business for, flat glass they sold in the United States during the Claim Period. Because of defendants' unlawful conduct, JELD-WEN paid artificially inflated prices for flat glass and has been damaged thereby.



COMPLAINT    -1-

## JURISDICTION AND VENUE

2. JELD-WEN brings this action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover damages, as allowed by law, costs of suit and a reasonable attorneys' fee, for defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

3. The Court has jurisdiction over the subject matter of this action pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 1337(a), and 28 U.S.C. §§ 1331, 1337.

4. Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b), (c) and (d) because each of the defendants resides, transacts business, is found, and/or has agents in this district, and because a substantial part of the events giving rise to JELD-WEN's claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

## DEFINITIONS

5. As used herein the following terms shall have the following meanings:

   a. The "Float Process," as used herein, is the process of manufacturing flat glass by passing molten glass from a melting furnace to a bath in which a continuous ribbon of molten glass floats on a liquid of greater density than the glass, normally composed of molten tin, where it is polished under controlled temperatures and subsequently fed into an annealing oven, where it is gradually cooled. The float process has replaced all other methods of producing flat glass in the United States, due to its ability to produce flat glass of uniform thickness with an absence of distortions. The float process also reduces fuel consumption and labor costs relative to other glass production methods.

   b. "Flat Glass," as used herein, includes all unfabricated and fabricated glass products manufactured through the "float process," whether transparent, opaque, translucent, reinforced or otherwise, formed in a flat shape, such as for cutting into window panes.

   c. "Unfabricated Flat Glass," as used herein is the flat glass initially manufactured by the float process. This includes clear, colored and tinted flat glass that is manufactured on the float lines.

d.      "Fabricated Flat Glass," as used herein, includes tempered glass, laminated glass, insulating glass, mirrors, industrial glass, and specialty products.

e.      "Flat Glass Market," as used herein, refers to sales of unfabricated flat glass and fabricated flat glass for, among other uses, residential and non-residential architectural, and specialty uses.

## PARTIES

### A.  Plaintiff

6.      Plaintiff JELD-WEN, inc. has been at all relevant times an Oregon corporation with its principal place of business in Klamath Falls, Oregon. Through growth and a series of acquisitions, JELD-WEN, inc. has become one of the largest manufacturers of windows, doors and millwork in the world. JELD-WEN, inc. sells or has sold windows under the following names: JELD-WEN, Caradco, Norco, Pozzi, Summit, WENCO, Seasonshield and Windowmaster. JELD-WEN, inc. has purchased companies that buy glass and is the surviving entity of each of these mergers and the owner of all claims on behalf of the acquired entities. During the Claim Period, JELD-WEN, inc. and each of its affiliated companies fabricated and sold glass windows and/or doors for use within the State of Oregon and/or throughout the United States. JELD-WEN, inc. and its acquired entities each purchased Flat Glass directly from one or more of the defendants and suffered injury to business and property by reason of the antitrust violations alleged herein.

### B.  Defendants

7.      Defendant AGC America, Inc., previously known as Asahi Glass America, Inc., is a Delaware corporation with its principal place of business at 2201 Water Ridge Parkway, Suite 400, Charlotte, North Carolina 28217. It is a regional headquarters, representative office, and holding company of AGC Group and the parent of AGC Flat Glass North America, Inc. During the Claim Period, AGC America, Inc., directly or through its subsidiaries or affiliates, manufactured and sold Flat Glass in the United States.

8. Defendant AGC Flat Glass North America, Inc. is a Delaware corporation with its principal place of business at 11175 Cicero Drive, Alpharetta, Georgia 30022-1166. AGC Flat Glass North America, Inc., a subsidiary of AGC America, Inc. and Asahi Glass Company, Limited, was previously named AFG Industries Inc. On September 4, 2007, AFG Industries, Inc. changed its name to AGC Flat Glass North America, Inc. At that time, Asahi Glass Company, Limited, AFG Industries Inc.'s parent company since 1992, unified the Group brand globally under the name "AGC." During the Claim Period, AGC Flat Glass North America, Inc., directly or through its subsidiaries or affiliates, manufactured and sold Flat Glass in the United States. AGC America, Inc. and AGC Flat Glass North America, Inc. will be collectively referred to herein as "AGC."

9. Defendant Guardian Industries Corporation ("Guardian") is a privately held Delaware corporation with its principal place of business in Auburn Hills, Michigan. During the Claim Period, Guardian manufactured and sold Flat Glass in the United States.

10. Defendant Pilkington North America, Inc. is an Ohio corporation with its principal place of business located at 811 Madison Avenue, Toledo, Ohio 43697. In June 2006, Pilkington North America, Inc. was acquired by Nippon Sheet Glass, Ltd. ("NSG"). During the Claim Period, Pilkington North America, Inc. manufactured and sold Flat Glass in the United States.

11. Defendant Pilkington Holdings Inc. is a Delaware corporation and holds the Pilkington Group's U.S.-based assets. Its principal place of business is 811 Madison Avenue, Toledo, Ohio 43697. Pilkington North America, Inc. and Pilkington Holdings Inc. will be collectively referred to herein as "Pilkington."

12. Defendant PPG Industries, Inc. ("PPG") is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania. During the Claim Period, PPG manufactured and sold Flat Glass in the United States.

## CO-CONSPIRATORS

13.     Various other persons, firms, and corporations have participated as co-conspirators with the defendants and have performed acts and made statements in furtherance of the conspiracy and other acts complained of herein.

## TRADE AND COMMERCE

14.     During the Claim Period, defendants sold and shipped substantial quantities of Flat Glass in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the defendants are located.

15.     The business activities of the defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate trade and commerce.

## THE FLAT GLASS INDUSTRY

16.     The flat glass industry in the United States is a multi-billion dollar industry. The Flat Glass Market is dominated in the United States by four primary producers, the defendants named in this Complaint. The defendants manufacture both unfabricated flat glass and fabricated flat glass sold in the United States directly to a variety of buyers, including window manufacturers such as JELD-WEN.

17.     The defendants produce approximately 75% of all unfabricated flat glass manufactured within the United States. All of the defendants are vertically integrated into glass fabrication.

18.     Fabricated flat glass accounts for approximately two-thirds of defendants' total dollar sales and a substantial majority of their profits. According to industry reports, concentration is quite high in both the unfabricated and fabricated segments of the market.

19.     There are essentially two principal uses for fabricated flat glass. The first use, commonly referred to as architectural, consists primarily of glass windows and doors used in the construction of residential and commercial structures and for the replacement of windows and doors in those structures. The second use, commonly referred to as automotive, consists primarily of glass used in automobiles, trucks, buses and other forms of transportation, including

the glass used for windshields, side and rear windows, both as original equipment and replacement. A small percentage of flat glass is used in specialty products such as mirrors, appliances and furniture.

20. Each defendant, either directly or through parents, subsidiaries or affiliates, manufactures and sells unfabricated flat glass as well as flat glass fabricated for architectural uses, among others.

21. Defendants are major manufacturers and sellers of flat glass to the construction industry. Upon information and belief, during the relevant time period defendants produced 75% of commodity tempered flat glass and also sold pyrolytically coated glass.

22. There are substantial barriers to entry into the production of unfabricated flat glass. The cost of designing and constructing a float glass plant is $100-$150 million and these plants are not readily convertible to other uses. Neither are other manufacturing facilities readily convertible to float glass production.

23. The float process was invented by defendant Pilkington in the late 1950's. Until 1982 Pilkington had a patent on this production method, and licensed its process to the other defendants to produce float glass. Under these license agreements, which extended after 1982, Pilkington and the other defendants agreed on a variety of restrictive practices which enabled defendants, inter alia, to control the production capacity of float glass, and thereby fix, maintain and stabilize its price and allocate business.

24. Beginning at least as early as January 1, 2002, defendants agreed to and did fix, raise and maintain the prices of Flat Glass purchased by JELD-WEN during the Claim Period by imposing identical surcharges, such as "energy surcharges" and representing that these surcharges were necessary to offset increased prices of natural gas and electricity, when in fact, defendants' energy costs were not uniform and these "surcharges" were a ruse to allow them to raise prices. In addition, defendants announced and implemented a series of price increases during the Claim Period, pursuant to the conspiracy alleged herein.

25. There is a history of collusion in the flat glass industry involving the defendants and/or their predecessors.

26. In June 1995 Libbey-Owens-Ford (LOF), the predecessor to Pilkington North America, sought corporate leniency from the United States Department of Justice for participating in a price-fixing scheme involving other North American flat glass producers.

27. In March 1999 JELD-WEN filed a complaint alleging price fixing by defendants and/or their predecessor entities. JELD-WEN opted out of a class action that made similar allegations.

28. In approximately June through August 1999, LOF, Guardian and AGC settled with the class action agreeing to pay a combined total of approximately $60 million.

29. In May 2003 the trial court granted summary judgment to PPG dismissing the class action lawsuit.

30. In April 2004, JELD-WEN entered a liquidated damages agreement with LOF.

31. In June 2004, JELD-WEN entered a settlement agreement with Guardian.

32. In August 2004, JELD-WEN entered a settlement agreement with PPG.

33. In September 2004, the Third Circuit Court of Appeals reversed in part the trial court's summary judgment in favor of PPG and remanded the class action.

34. In November 2005, PPG settled with the class plaintiffs and agrees to pay approximately $60 million dollars.

35. In February 2006, AGC settled with JELD-WEN.

36. A November 2007 European Commission Press Release announced a total of €486,900,000 in fines on Asahi, Guardian, Pilkington and St. Gobain because they coordinated price increases and other commercial conditions for deliveries of flat glass - used for windows, glass doors and mirrors - within the European Economic Area.

37. The press release indicated that evidence uncovered describes in detail several meetings in restaurants and hotels in different European countries during which Asahi, Guardian, Pilkington and Saint-Gobain discussed and agreed upon the level and timing of

COMPLAINT                                              -7-

price increases (including which undertaking was to lead the price increase), target prices, minimum prices and/or exchanged sensitive commercial information.

38.     According to the site Glass on Web, in June 2002, Luc Willame was appointed to head the worldwide flat glass operations of Asahi Glass. In this position, Mr. Willame was responsible for two worldwide operating companies, one making Flat Glass and the other automotive glass. Mr. Willame, stepped down from that position around the time the European Commission's 2005 investigation commenced.

39.     Within days of the European Commission's press release, the first of what would be a number of class action complaints were filed alleging that some or all of the defendants participated in a conspiracy to raise flat glass prices in the United States. In June 2008, the Judicial Panel on Multidistrict Litigation ordered that these cases be consolidated for pre-trial purposes in the United States District Court for the Western District of Pennsylvania and assigned the matter to the Honorable Donetta W. Ambrose ("Flat Glass II").

40.     A November 2008 European Commission Press Release announced the highest cartel fines the Commission had ever imposed for an individual company and for a price fixing cartel as a whole. The European Commission imposed fines total totaling €1,383,896,000 on Asahi, Pilkington, Saint-Gobain and Soliver for illegal market sharing, and the exchange of commercially sensitive information regarding deliveries of automotive glass in the EEA.

41.     The Press Release indicated that the Commission started this investigation on its own initiative on the basis of reliable information provided by an anonymous informant. The information prompted the Commission to carry out surprise inspections in 2005 at several sites of car glass producers in Europe. After the inspections, the Japanese Asahi Glass Co. and its European subsidiary AGC Flat Glass Europe (formerly known as 'Glaverbel) filed an application under the 2002 Leniency Notice. Under the Leniency Notice, companies can benefit from a reduction of up to 100% if they enhance the Commission's ability to discover secret cartels. Asahi/Glaverbel cooperated fully with the Commission and provided additional information to help to expose the infringement and its fine was reduced by 50%.

42. In February 2009 Judge Ambrose denied defendant's motion to dismiss the consolidated amended complaint in the Flat Glass II class action lawsuit. Judge Ambrose noted the consolidated complaint alleges:

    a. A history of an inability to raise and maintain prices prior to the conspiracy;

    b. A history of varying surcharges by region of the country until after June 2002, when defendants did not vary their surcharges by region;

    c. That an agreement existed for over 30 months beginning in June of 2002 by raising prices by identical percentages and charging energy surcharges in virtual lockstep while providing customers with identical charts and justifications for the same, until February 2005, when the European Commission launched raids upon the European construction flat glass market;

    d. Thereafter, defendants did not engage in lock step parallel conduct.

43. In a notice of proposed class action settlement dated February 16, 2011, JELD-WEN was notified of proposed settlements by the class action plaintiffs with defendants. JELD-WEN was a member of the proposed settlement classes as defined in the notice. As provided in the notice, JELD-WEN elected to opt out of the proposed settlement classes to pursue its own claims against defendants.

44. JELD-WEN purchased approximately $100 million in glass products directly from the defendants during the Claim Period. JELD-WEN paid energy and other surcharges during this period that were imposed by all defendants.

## VIOLATIONS ALLEGED

45. Beginning at least as early as January 1, 2002 and continuing through at least December 31, 2006, the exact dates being unknown to JELD-WEN, defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of the above-described trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

46. The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants and their co-conspirators, the substantial terms of which were to (a) raise, fix, stabilize or maintain at artificially high and non-competitive levels the prices of Flat Glass sold in the United States and (b) allocate business for Flat Glass. Defendants' unlawful activity related to all flat glass uses as described in this Complaint.

47. For the purpose of forming and effectuating their continuing contract, combination or conspiracy, defendants and their co-conspirators did those things they contracted, combined or conspired to do, including:

    a. Defendants communicated in face-to-face meetings and otherwise about the Flat Glass Market and prices in the market.

    b. During these meetings and communications, defendants agreed on Flat Glass prices and allocation of business.

    c. The defendants' continuing contract, combination and conspiracy followed a repetitive pattern throughout the Claim Period. Senior executives of each of the defendants named herein, generally those charged with the responsibility of establishing pricing policy at their respective companies, met at trade shows, industry conventions, and otherwise, and communicated concerning the pricing of Flat Glass, and their intentions and strategies with respect thereto.

48. The contract, combination or conspiracy had the following effects, among others:

    a. Defendants sold Flat Glass to plaintiff in the United States at artificially high and non-competitive levels;

    b. Plaintiff was deprived of the benefits of free and open competition in the purchase of Flat Glass; and

    c. Price competition among defendants in the sale of Flat Glass was restrained, suppressed and eliminated.

49. As a result of defendants' unlawful conduct in furtherance of their continuing contract, combination and conspiracy, JELD-WEN has been injured in its business and property in that it has paid more for Flat Glass than would have been paid in the absence of defendants' price fixing and allocation of business.

50. JELD-WEN has been required to pay artificially inflated prices for Flat Glass products, including by paying a per truckload energy surcharges imposed by all of the defendants during the Claim Period.

## TOLLING OF THE STATUTE OF LIMITATIONS

51. JELD-WEN had no knowledge of the contract, combination or conspiracy alleged herein, or any facts which might have led to the discovery thereof, until approximately 2007. JELD-WEN could not have discovered the contract, combination or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

52. Because the contract, combination or conspiracy was kept secret by defendants and their co-conspirators, JELD-WEN was unaware of the fact that prices and allocation of business in the United States Flat Glass Market were secretly agreed upon as alleged herein.

53. In addition, the filing of the Flat Glass II class actions further tolled the statute of limitations on behalf of all entities who were purported members of the class, including JELD-WEN.

## DAMAGES

54. Because of the contract, combination, or conspiracy alleged herein, JELD-WEN paid more for flat glass than it would have paid but for defendants' unlawful acts and practices. The exact amount of damages is unknown but will be proven at trial.

## JURY DEMAND

55. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JELD-WEN demands a trial by jury of any issue triable of right by a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that:

a. The unlawful contract, combination and/or conspiracy alleged herein be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

b. Plaintiff recovers three-fold the damages determined to have been sustained by plaintiff and that joint and several judgments in favor of plaintiff be entered against the defendants and each of them;

c. Defendants be enjoined from continuing the unlawful contract, combination and/or conspiracy alleged herein;

d. Plaintiff recovers the costs of this suit (including expert fees), and reasonable attorneys' fees as provided by law; and

e. Plaintiff be granted such other, further and different relief as the nature of the case may require or as may be just, equitable and proper to this Court.

Dated this 28th day of March, 2011.

          Respectfully submitted,

          FOSTER PEPPER PLLC

          */s/ Deborah Crabbe*
          Deborah Crabbe, WSBA 041510
          1111 Third Avenue, Suite 3400
          Seattle, WA 98101-3299
          Phone: (206) 447-4400
          Fax: (206) 749-2009
          Email: crabd@foster.com

          Attorneys for JELD-WEN, inc.