**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | |
|---|---|
| IN RE: FLAT GLASS ANTITRUST LITIGATION (II) | ) No. 8-180 ) MDL No. 1942 |

_____

| | |
|---|---|
| This document relates to: JELD-WEN, INC. v. AGC AMERICA, et al., | ) No. 11-658 ) |


**OPINION AND ORDER**

**SYNOPSIS**

This action followed Plaintiff's opt-out of a class action against flat glass manufacturers, which in turn followed a European Commission investigation against flat glass manufacturers in Europe.  Here, Plaintiff brings suit for violation of the Sherman Act, 15 U.S.C. § 1.  The action surrounds conspiracy to fix prices, and allocate business, in restraint of trade.   Defendants have filed a Motion for Summary Judgment, contending that Plaintiff has failed to produce evidence of conspiracy, as opposed to lawful parallel conduct, between 2002 and 2005.[1]  In turn, Plaintiff contends that they have adduced sufficient evidence to overcome summary judgment.   Also pending is Plaintiff's Rule 56(d) declaration, seeking an opportunity to depose one of Defendant's affiants.

_____

[1] Defendants are AGC America, Inc. (previously named Asahi Glass America, Inc.), AGC Flat Glass North America (previously named AFG Industries, Inc.) (collectively, "AGC"); Guardian Industries Corp. ("Guardian"); Pilkington North America, Inc. and Pilkington Holdings Inc. (collectively, "Pilkington"); and PPG Industries, Inc. ("PPG").

I have carefully reviewed the parties' voluminous evidentiary submissions, the history of

this and related legal proceedings, and both parties' well-researched and thorough briefs.  Upon

such review, I conclude that Defendants' Motion for Summary Judgment must be denied.

Accordingly, Plaintiff's Motions for oral argument and Rule 56(d) discovery will be denied as

moot.

## OPINION

## I.  APPLICABLE STANDARDS

### A.   RULE 56 STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).   In considering a motion for summary judgment, the Court must

examine the facts in a light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. V. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990).  The moving party

bears the burden of demonstrating the absence of any genuine issues of material fact.  United

States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).  Rule 56, however, mandates the entry of

judgment against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986).

### B.  ANTITRUST STANDARDS

In addition to applying traditional summary judgment principles, courts have developed

particular approaches to Rule 56 motions in antitrust cases.  To survive a motion for a summary

judgment in this context, a plaintiff must produce evidence "'that tends to exclude the

possibility' that the alleged conspirators acted independently." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (U.S. 1986). "Another and equivalent way to put this is that [plaintiff] must present evidence that would enable a reasonable jury to reject the hypothesis that the defendants foreswore price competition without actually agreeing to do so." In re High Fructose Corn Syrup Antitrust Litig., 295 F.3d 651, 661 (7th Cir. 2002). These formulations, in this case, thus place squarely before the Court what has been termed "the oligopoly problem" – which, generally speaking, refers to the difficulties inherent in legal evaluation of tacit coordination in an oligopoly.[2]

Moreover, in cases such as the one at bar, certain inferences may not be drawn from circumstantial evidence. Nelson v. Pilkington PLC, 385 F. 3d 350, 357 (3d Cir. 2004) ("Flat Glass I"). What constitutes a "reasonable inference" in an antitrust case, sufficient to overcome summary judgment, is limited. Superior Offshore Int'l, Inc. v. Bristow Group, No. 11-3010, 2012 U.S. App. LEXIS 15539, at **10-11 (3d Cir. July 27, 2012). Courts, however, face a gray area in determining what inferences are appropriate, as acceptability varies with the plausibility of plaintiff's theory, and the danger associated with the inferences. Id. at *11. Therefore, "[i]f the factual context renders [the plaintiff's] claim implausible--if the claim is one that simply makes no economic sense--[a plaintiff] must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary." Matsushita, 475 U.S. at 587.

Moreover, I must be mindful that "Matsushita . . . did not introduce a special burden on plaintiffs facing summary judgment in antitrust cases." Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 468, 112 S. Ct. 2072, 119 L. Ed. 2d 265 (1992). Instead, "Matsushita demands only that the nonmoving party's inferences be reasonable in order to reach the jury, a

---

[2] See generally Thomas A. Piraino, Jr., Regulating Oligopoly Conduct Under the Antitrust Laws, 89 Minn. L. Rev. 9, 13 (2004); John E. Lopatka, Solving the Oligopoly Problem: Turner's Try, 41 Antitrust Bull. 843, 905 (1996).

requirement that was not invented, but merely articulated, in that decision." Id. at 468.   As one court explained:

> Fundamentally, "tends to exclude" does not mean "excludes."
> Matsushita requires only that, construing the plaintiff's evidence in the light
> most favorable to it as the nonmoving party, a reasonable fact-finder could find
> that the defendants could not have also been engaging in independent,
> permissible conduct. …Where the plaintiff's theory is "plausible," … then the
> task of weighing "competing permissible inferences remains within the province
> of the fact-finder at a trial." Although "summary judgment is a valuable means
> for avoiding unnecessary trials . . . it should not be regarded as a substitute for
> trial." At most, the court's role in examining the factual inferences at the
> summary judgment stage is limited to determining whether the parties have
> drawn "reasonable and therefore permissible," inferences from the evidence
> presented.

In re Ethylene Propylene Diene Monomer (EDPM) Antitrust Litig., 681 F. Supp. 2d 141, 167-68 (D. Conn. 2009) (citations omitted).

Due to the fine line-drawing and balancing act imposed by standards applicable in conscious parallelism cases, the fact-intensive nature of antitrust litigation, and the fact that motive and intent are of central importance, district courts must tread carefully when considering appropriate inferences and their impact.  Cf., e.g., In re Mushroom Direct Purchaser Antitrust Litig., 621 F. Supp. 2d 274, 281 (E.D. Pa. 2009).  Judge Posner has famously warned of the "traps" awaiting a court asked to decide whether there is enough evidence of price fixing to reach a jury.  One is to weigh conflicting evidence, which is the unique province of the jury; another is to believe that if no single piece of the plaintiff's evidence points clearly to conspiracy, the record as a whole cannot survive judgment.  High Fructose Corn Syrup, 295 F. 2d at 655-56.

On the other hand, courts must be wary of drawing inferences from ambiguous evidence, because "mistaken inferences in such a context are especially costly because they chill the very

conduct the antitrust laws are designed to protect." In re Baby Food Antitrust Litig., 166 F. 3d 112, 124 (3d Cir. 1999).

## II. DEFENDANTS' MOTION

Section 1 of the Sherman Act declares that "every contract, combination…, or conspiracy, in restraint of trade or commerce . . . is declared to be illegal." 15 U.S.C. § 1. Thus, the existence of an agreement is the "very essence" of a Section 1 claim. Flat Glass I, 385 F.3d at 356. "[T]here must be a '"unity of purpose or a common design and understanding or a meeting of minds'" or '"a conscious commitment to a common scheme.'" Id. at 357 (quoting Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 752, 764, 79 L. Ed. 2d 775, 104 S. Ct. 1464 (1984)).

The Sherman Act does not, therefore, prohibit "conscious parallelism," or, as Defendants call it, "oligopolistic interdependence" – terms that describes entities in a concentrated market that maintain or raise their prices at supracompetitive levels, without engaging in overt concerted action to do so. Id. at 359-60. Otherwise stated, it is not in itself illegal for firms to effectively share monopoly power, "setting their prices at a profit-maximizing, supracompetitive level by recognizing their shared economic interests and their interdependence with respect to price and output decisions." Brooke Group v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227, 113 S. Ct. 2578, 125 L. Ed. 2d 168 (U.S. 1993).

To make a successful claim under the Sherman Act based on conscious parallelism, "a plaintiff must show (1) that the defendants' behavior was parallel; (2) that the defendants were conscious of each other's conduct and that this awareness was an element in their decision-making process; and (3) certain 'plus' factors." Flat Glass I, 385 F.3d at 360 n.11. The "plus factors" have been described as ""circumstances under which . . . the inference of rational

independent choice [is] less attractive than that of concerted action." <u>Lum v. Bank of Am</u>., 361 F.3d 217, 230 (3d Cir. 2004).   Such factors include, evidence that the defendant had a motive to enter into a price fixing conspiracy; evidence that the defendant acted contrary to its interests; and evidence implying a traditional conspiracy.  <u>Id.</u> at 360.  The first two factors are generally considered less important, because they may merely reflect conscious parallelism or interdependence.  <u>Superior Offshore</u>, 2012 U.S. App. LEXIS 15539, at **15-16.  The third factor, however, is "especially important" in a case such as the one at bar.  <u>Id.</u> at *16.  Another "plus factor" is the use of facilitating practices, such as information exchange.  <u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 198 (2d Cir. 2001.  Indeed, one commentator has indicated that the "plus factor" may be applied almost as an evidentiary catchall, in that "Plaintiffs can establish a plus factor by pointing to a constellation of pieces of evidence that, taken as a whole, create the necessary inference."  William H. Page, Communication and Concerted Action, 38 Loy. U. Chi. L.J. 405, 416-417 (2007).

Because this case does not rely on direct evidence of conspiracy,[3] the crucial issue is whether Defendants' conduct arose from their independent decisions, or due to some agreement. It is apparent that much of Plaintiff's evidence, and the inferences arising therefrom, are weak. For example, Plaintiff points to Defendants' communications with customers, and isolated instances of purported predictions of co-Defendants' price increases.  Under applicable standards, particularly when analyzed piecemeal, none of these facts tend to exclude independent behavior, and many of the inferences that Plaintiff seeks are tenuous.   This is so because "[c]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy."   <u>Matsushita,</u> 106 S. Ct. at 1356.

---

[3] Although Defendants assign importance to the lack of direct evidence of conspiracy after voluminous discovery, several courts have noted that "smoking guns" are rare in antitrust conspiracy cases. <u>See</u> <u>Apex Oil Co. v. Dimauro</u>, 641 F. Supp. 1246

Defendant aptly distinguishes the present facts from those in <u>Flat Glass I</u>, and I agree that the two represent materially different cases.  Indeed, during the process of reviewing the parties' proffers, particularly in light of prior proceedings involving this industry, I was left with the occasional impression that Plaintiff "proceed[ed] by first assuming a conspiracy and then setting out to prove it."  <u>Blomkvest Fertilizer, Inc. v. Potash Corp. of Sask., Inc</u>., 203 F.3d 1028, 1037 (8th Cir. 2000).

Nonetheless, I am mindful that I am obligated to consider the evidence as a whole, and that a court "should not tightly compartmentalize the evidence put forward by the nonmovant, but instead should analyze it as a whole to see if it supports an inference of concerted action." <u>Petruzzi's IGA v. Darling-Del</u>aware, 998 F.2d 1224, 1230 (3d Cir. 1993).    I am also aware of our Court of Appeals' previous observation, which provides a backdrop against which the present facts must be viewed, that the nature of the flat glass industry made price fixing feasible – <u>i.e.</u>, that "the flat glass industry is in many respects a text book example of an industry susceptible to efforts to maintain supracompetitive prices."  <u>Flat Glass I</u>, 385 F.3d at 361. Defendants do not suggest that the flat glass industry became less susceptible to non-competitive conduct during the time of the conspiracy alleged here.   Taken as a whole, in light of a susceptible industry, undisputed facts regarding parallel price increases, the timing of those increases, meetings between Defendants, and Plaintiff's expert proffer, the constellation of facts takes on a somewhat different tenor.

Mention of Plaintiff's expert raises the issue of extant credibility judgments to be made. For example, the parties disagree about whether allegedly collusive price increases were rational or justified.[4]   Plaintiff 's expert concludes that from 2002 to 2005, defendants engaged in at least

---

[4] If one were to conclude that the price increases were irrational at any point during the alleged conspiracy, that conclusion would place a potentially damning gloss on the overall facts.  "[A]n artificial price level not related to

five coordinated supracompetitive price and surcharge increases.  He considered the market, the

industry, firm conduct, and price increases during the pertinent times, and concludes that "the

industry was in a collusive regime."  Defendants, in turn, place heavy emphasis on evidence that

during the period alleged in the Complaint, prices were driven upward by increased

manufacturing costs and the growing economy, as well as increased demand for flat glass and

increases in capacity utilization; Defendants proffer their own expert's testimony, and also point

to supportive testimony from Plaintiff's counterpart.   Generally speaking, inconsistencies

between an expert's report and deposition testimony, or evidence that discredits his opinions, are

rarely grounds for summary judgment.  Cf. Holden Metal v. Wismarq, No. 00-91, 2004 U.S.

Dist. LEXIS 12164 (N.D. Ill. July 4, 2004).  Moreover, "[t]o the extent the differing opinions

must be reconciled, such a factual interpretation is within the province of a jury."  Rooney v.

City of Phila., 623 F. Supp. 2d 644, 656 (3d Cir. 2009).

  In addition, Plaintiff proffers several of Defendants' communications, potentially

reflecting Defendants' impressions that pricing was low, projecting weakening economic

indicators, declining glass prices, and overall price reductions.   Plaintiff has also produced later

communications that might suggest oversupply and excess capacity.   Defendants contend that

Plaintiff mischaracterizes many of these communications, or takes them out of proper context.

However, in a case such as this one, "motive and intent play leading roles, the proof is largely in

the hands of the alleged conspirators, and hostile witnesses thicken the plot."  Superior Offshore,

2012 U.S. App. LEXIS 15539, at *10 (quoting Matsushita, 475 U.S. at 587).   Accordingly, the

Defendants' perceptions about whether price increases made fiscal sense – and not just whether

---

supply and demand of a given commodity may be evidence from which such agreement or understanding or some
concerted action of sellers operating to restrain commerce may be inferred."  Cement Mfrs. Protective Ass'n v.
United States, 268 U.S. 588, 606, 45 S. Ct. 586, 69 L. Ed. 1104 (1925).

they were rational according to post-hoc economic analysis – are of import.[5]  Moreover, the mere

fact that price increases were justified does not negate the remaining evidence, slim though it

might be.[6]

**CONCLUSION**

In sum, although the evidence tending to exclude independent conduct is weak, I would

impermissibly invade the province of the jury if I were to deem it too feeble to outlive this stage

of litigation.  While Defendants' arguments are persuasive and well-taken, it remains, as they

suggest, that the unilateral conduct at issue here may be **misinterpreted** as conspiracy –

emphasis theirs – and, presumably, vice versa.   Although I must determine whether a jury could

reasonably reach a particular factual interpretation, the act of interpretation itself exceeds my

role.  Entering judgment on the present record would require me to "stand in the stead of the

fact-finder at trial by weighing competing inferences and determining which party has

established the 'better' explanation." Ethylene Propylene Diene Monomer, 681 F. Supp. 2d at

167.   Thus, my disinclination towards entering judgment in this case represents a considered

balance between the principles evoked by Judge Posner's "traps," and my duty, as initial

gatekeeper, to assess whether Plaintiff is entitled to bring its case to a jury under all applicable

standards.  Here, the balance tips against summary judgment.

Defendants' Motion for Summary Judgment will be denied, and Plaintiff's Motion denied

as moot.  An appropriate Order follows.

---

[5] Indeed, rising costs and demand may weigh against a finding of price-fixing, but do not rule out such a finding. There are other reasons that a non-competitive agreement might occur.  As one commentator noted, "one of the primary reasons that some firms enter price-fixing conspiracies is to reduce uncertainty. "  Christopher R. Leslie, Judgment-Sharing Agreements, 58 Duke L.J. 747, 799 (Feb. 2009).
[6] As an aside, several of the parties' arguments merit separate mention.  Just as I cannot accept the suggestion that the U.S. flat glass industry is culpable because Europe's industry was found culpable, I cannot accept as decisive the contention that parallel, non-collusive behavior prior to the alleged conspiracy necessarily means that all parallel behavior was not collusive. In addition, the fact that Defendants engaged in non-parallel price or surcharge actions during the pertinent time frame does not rule out the possibility that it also engaged in collusive conduct during that time.

**ORDER**

AND NOW, this 1st day of November, 2012, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment [64] is DENIED.  Plaintiff's request pursuant to Rule 56(d) is DENIED as moot.   A telephone status conference will be held on 11/8/12 at 11:30 A.M.  Plaintiff's counsel is to initiate the call.

BY THE COURT:

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court